UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT ROTH and PAUL G. BAMBERG, )<br><br>Plaintiffs, )<br><br>v. )<br><br>GOLDMAN SACHS & CO., )<br>GOLDMAN SACHS GROUP, INC., and )<br>GOLDMAN SACHS & CO., LLC, )<br><br>Defendants. ) | Civil Action No: |

**COMPLAINT AND JURY DEMAND**

1.     This is an action to recover damages suffered by the plaintiffs, two founders of

Dragon Systems, Inc. ("Dragon"), as a result of the breach of contract, negligence, gross

negligence, fraud, misrepresentation, unfair and deceptive business practices, breach of the

covenant of good faith and fair dealing, breach of fiduciary duty, and violation of statutes and

rules governing the sale, offer to sell and advising concerning the sale of securities in connection

with the undertaking by defendant Goldman, Sachs & Co. and related entities (collectively

"Goldman").  Goldman undertook to advise Dragon and plaintiffs in connection with the sale of

their stock in Dragon.  Goldman advised plaintiffs to exchange their valuable interests in Dragon

for ultimately worthless stock in Lernout & Hauspie Speech Products, N.V. ("LHSP"), a Belgian

corporation.  Goldman knew or should have known that the LHSP stock was worthless at the

time of the exchange.  Plaintiffs, along with other Dragon shareholders, followed Goldman's

advice and merged Dragon into a U.S. subsidiary of LHSP, L&H Holdings USA, Inc. ("L&H").

Shortly thereafter, material irregularities on the LHSP financial statements were publically

disclosed and it was discovered that the LHSP stock was worthless, a fact known or that should have been known to Goldman.

2.      Dragon was a closely held corporation with its principal place of business in Newton, Massachusetts.

3.      Plaintiff Paul G. Bamberg is a resident of Massachusetts.

4.      Bamberg was one of the founders of Dragon.

5.      Prior to June 7, 2000, Bamberg, individually and through related trusts, owned approximately 5.54% of the issued and outstanding stock of Dragon.

6.      Plaintiff Robert Roth is a resident of Massachusetts.

7.       Roth was one of the founders of Dragon.

8.      Prior to June 7, 2000, Roth owned approximately 2.78% of the issued and outstanding stock of Dragon.

## JURISDICTION

9.      Bamberg and Roth are citizens of Massachusetts.

10.     Plaintiffs are informed and believe, and therefore aver that Defendant Goldman, Sachs & Co. is a New York limited partnership with a principal place of business in New York, New York.  Plaintiffs are informed and believe, and therefore aver that no limited partner of Goldman, Sachs & Co. is a citizen of Massachusetts.

11.     Plaintiffs are informed and believe, and therefore aver that Defendant The Goldman, Sachs & Co. LLC is a Delaware limited liability company with a principal place of business in New York, New York.  Plaintiffs are informed and believe, and therefore aver that

B3758032.1

no members of the limited liability company are citizens of the Commonwealth of Massachusetts.

12.     The Defendants will be referred to herein collectively as "Goldman."

13.     Plaintiffs are informed and believe, and therefore aver that Goldman has a place of business in Massachusetts at 125 High Street, Boston.  Plaintiffs are informed and believe, and therefore aver that Goldman regularly does or solicits business, or engages in other persistent course of conduct in Massachusetts, or derives substantial revenue from services rendered in Massachusetts.

14.     Plaintiffs' injuries and damages caused by Goldman, as alleged in this Complaint, are the result of Goldman transacting business in Massachusetts and/or by Goldman causing tortious injury by an act or omission in Massachusetts.

15.     Plaintiffs are informed and believe, and therefore aver that there is a complete diversity of citizenship between Bamberg and Roth and the Defendants.  The amount in controversy as alleged in the Complaint exceeds $75,000.

16.     Accordingly this Court has jurisdiction over this action under 28 U.S.C. § 1332(a).

17.     Bamberg and Roth also assert claims under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et. seq. and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

18.     Accordingly, this Court has jurisdiction over this action under the provisions of 28 U.S.C. § 1331, and has supplemental jurisdiction over the common law claims here alleged under the provisions of 28 U.S.C. § 1367.

## BAMBERG AND ROTH'S ROLES IN DRAGON CORPORATION, A CLOSELY HELD CORPORATION

19.     Dragon was founded in 1982.

20.     Dragon revolutionized speech recognition technology.

21.     Plaintiffs are informed and believe, and therefore aver that Dragon, at all relevant times, was a closely held corporation.  The vast majority of the stock of Dragon was held by only a very limited number of shareholders.

22.     Both Bamberg and Roth along with Janet and James Baker were founders of Dragon.

23.     At the time Dragon began considering a merger with another company, Janet and James Baker owned 51 percent of Dragon's stock and were therefore Dragon's majority shareholders.

24.     The Bakers, along with Bamberg and Roth, substantially participated in the management, direction and operations of the corporation.  James Baker served as Dragon's Chairman and Chief Executive Officer.  Janet Baker served as Dragon's President and succeeded James Baker as Chairman and CEO.  Janet Baker was a member of Dragon's Board of Directors at the time of the merger.

25.     Bamberg and Roth were employed by Dragon from its founding until the merger of Dragon into L&H, at which point they were employed by L&H.

26.     Bamberg served Dragon as a research scientist and became the Vice President of Research, and then a Dragon Fellow.

27.     Roth served Dragon as a research scientist and held the positions of research scientist, senior research scientist, and principal research scientist during his tenure at Dragon.

B3758032.1

28.     Bamberg and Roth developed algorithms for speech recognition software that enabled the software to run in real time.  This was a major advance in speech recognition technology.  Bamberg and Roth were key contributors to Dragon's extensive research and development pipeline.

29.     Bamberg served on the Dragon Board of Directors from its initiation until the late 1990s.

30.     Roth was on the Dragon Board of Directors when the board was formed and during the merger of Dragon into L&H.

31.     Roth and Bamberg were stockholders of Dragon at all material times.

32.     As a closely held corporation the officers, directors and stockholders of Dragon each has fiduciary duties to the other officers, directors and stockholders as though each were partners of the others or agents of the others.  Accordingly, at all material times Janet Baker and James Baker were acting as agents for Roth and Bamberg, each or whom was a member of the closely held Dragon corporation.


## THE MERGER OF DRAGON INTO L&H

33.     Plaintiffs are informed and believe, and therefore aver that in order to continue to develop its technology, during the fall of 1999 the principal shareholders of Dragon considered a sale of the company.

34.     Janet Baker, on behalf of the principal shareholders including Bamberg and Roth, coordinated the potential sale of Dragon and acted as agent for the shareholders, directors and employees.

B3758032.1

35.     Plaintiffs are informed and believe, and therefore aver that because Dragon was a closely held corporation, Janet Baker was effectively a partner of Bamberg and Roth.

36.     Plaintiffs are informed and believe, and therefore aver that LHSP approached Dragon about a merger in the fall of 1999.

37.     At the time of the proposed merger, Dragon was valued at no less than $600 million.  Bamberg's stock was valued in excess of $30 million, and Roth's stock was valued in excess of $15 million.


## GOLDMAN'S ROLE IN THE MERGER

38.     In late 1999, Goldman solicited Dragon's business, making representations regarding Goldman's expertise and competence, to serve as Dragon's financial advisor in the sale of Dragon under consideration.

39.     Plaintiffs are informed and believe, and therefore aver that Goldman represented to Dragon that Goldman would provide the requisite level of professional service to protect Dragon, Bamberg, and Roth's interests in any proposed sale of Dragon.

40.     Plaintiffs are informed and believe, and therefore aver that Goldman never revealed to Dragon, Bamberg or Roth that its services would be limited and inadequate.

41.     Plaintiffs are informed and believe, and therefore aver that Goldman sent a draft engagement letter to Janet Baker and others and made statements regarding Goldman's experience, expertise in investment banking, high reputation for professionalism, international resources, and the value Goldman would add to the transaction.

42.     Plaintiffs are informed and believe, and therefore aver that Dragon engaged Goldman because, among other reasons, Goldman was and is a large and well-respected firm,

B3758032.1

and Goldman has branches around the world, including in Asia, where L&H reported substantial business.

43.     Dragon agreed to engage Goldman and the terms of the engagement were formalized in a letter on December 2, 1999, which was later amended on March 31, 2000. (Engagement letter and amendment are attached hereto as Exhibit A.)  The engagement letter was addressed to Ellen Chamberlain, Chief Financial Officer of Dragon, Janet Baker, and Donald L. Waite, Executive Vice President and Chief Administrative Officer of Seagate Technology, a Dragon shareholder.  The engagement letter contained the salutation to "Ladies and Gentleman" and stated that Goldman would be engaged by "Dragon Systems, Inc." Chamberlain signed the letter on behalf of Dragon, with Waite and Janet Baker signing as to the "Fifth Sentence of Annex A."

44.     Under the terms of the engagement letter, Goldman undertook to "provide financial advice and assistance" to Dragon and its shareholders in connection with the potential sale of Dragon.  Goldman's services were to include, but were not limited to, "performing valuation analyses, searching for a purchaser acceptable to you, coordinating visits of potential purchasers and assisting you in negotiating the financial aspects of the transactions."  (Exhibit A at 1.)

45.     The engagement letter further states that "any written or oral advice provided by Goldman Sachs in connection with our engagement is exclusively for the information of the Board of Directors and senior management of the Company. . . ."  (Exhibit A at 4.)

46.     Plaintiffs were part of the senior management of Dragon.

47.     Goldman's purported services were provided in 1999 and 2000.  These allegedly included conducting "due diligence" inquiries of LHSP and providing advice concerning the value of LHSP stock and the suitability of the proposed L&H merger.

48.     Plaintiffs are informed and believe, and therefore aver that Goldman's agreement that it would act as Dragon's exclusive financial adviser on the merger, and Goldman's statements regarding its experience and expertise induced Dragon, Bamberg and Roth to rely on Goldman's recommendations.

49.     Plaintiffs are informed and believe, and therefore aver that Goldman knew that Dragon was a closely held corporation and that the principal shareholders of Dragon, including Bamberg and Roth, would rely upon the advice provided by Goldman.

50.      Plaintiffs are informed and believe, and therefore aver that Bamberg and Roth were intended beneficiaries of the services Goldman provided.

51.     Plaintiffs are informed and believe, and therefore aver that Janet Baker served as Bamberg and Roth's agent during Dragon's dealings with Goldman, and kept them informed on an almost-daily basis as to her interactions with Goldman.

52.     Goldman had numerous contacts with Dragon throughout the pre-merger period.

53.     Initially, L&H offered a combination of cash and LHSP stock to Dragon shareholders as compensation for the merger.

54.     In March, 2000, L&H changed its offer to all stock.  Goldman did not attend the meeting at which this change was announced.  Goldman failed to warn Bamberg and Roth that this change signaled that L&H was not financially sound.

55.     Under the terms of the engagement letter, Goldman would receive a quarterly fee, plus a "transaction fee," the amount of which would depend on the existence and terms of a sale

- 8 -

of Dragon.[1]  (Exhibit A at 1-2.)  For example, a transaction fee of no less than $2 million would be due if less than 50% of the outstanding common stock or assets of Dragon were acquired. (Exhibit A at 2.)  In addition, "in the event that either Sony Corporation or Psion PLC, or their respective affiliates, invest $40 million or less in [Dragon] through a private issuance of new shares by the Company, no fee shall be payable in connection with such transaction."  Pursuant to the amendment of March 31, 2000, Dragon agreed to pay Goldman a $5 million transaction fee if all or a portion of Dragon were sold to L&H.  (Exhibit A at 9.)

56.    Plaintiffs are informed and believe, and therefore aver that as a result of the fee structure, Goldman had a conflict of interest—Goldman would benefit greatly if a sale of Dragon were consummated, even if the sale harmed plaintiffs.  Plaintiffs are informed and believe, and therefore aver that Goldman had a conflict of interest for other reasons as well which were not revealed to Dragon—Goldman had served as a financial advisor to LHSP, received payment from LHSP for promoting LHSP stock, was one of the largest traders of LHSP stock 1999, and had various other business opportunities from LHSP.

57.    Plaintiffs are informed and believe, and therefore aver that Goldman knew that the assent of Bamberg and Roth was required for the merger to take place, and therefore for Goldman to receive a higher fee.

58.    Plaintiffs are informed and believe, and therefore aver that Goldman had numerous communications with Dragon leading up to the merger that Goldman intended Dragon, including Bamberg and Roth, to rely upon.

59.    Plaintiffs are informed and believe, and therefore aver that none of the communications between Goldman and Dragon provided a warning by Goldman that Dragon should not proceed with the merger of Dragon into L&H.

---

[1] The quarterly fee would be credited against any transaction fee due.

B3758032.1

60.     Goldman provided advice to Dragon in December, 1999 and thereafter in support of the merger of Dragon into L&H.  Goldman advised Dragon, Bamberg and Roth to proceed with the merger, and did not provide accurate information regarding the risk of the merger.

## THE FINAL PRE-MERGER MEETING

61.     Two representatives from Goldman attended a meeting of the directors and principal shareholders of Dragon (or their representatives) where a final decision was to be made to proceed with the merger of Dragon into L&H (the "final meeting").

62.      Bamberg and Roth were present at the final meeting.  Roth was a member of the Dragon Board of Directors and a principal shareholder at the time, and Bamberg was a principal shareholder.

63.     During the final meeting, Goldman made a presentation as to the financial well-being of L&H and related entities.  Goldman recommended that Dragon's shareholders, including Bamberg and Roth, enter into the proposed L&H merger and sell their shares of Dragon in return for LHSP stock.

64.     At the final meeting, Goldman was requested to provide a written statement setting forth its recommendation that Dragon proceed with the merger with L&H.  Goldman refused to provide a written statement and only provided its recommendations and opinions orally.

65.     Plaintiffs are informed and believe, and therefore aver that Goldman recommended the merger despite the a material change of terms; originally, Dragon shareholders were to receive half of the value of their stock in cash and the other half in LHSP stock, but the final proposal was that Dragon shareholders would receive LHSP stock only, and no cash.

B3758032.1

66.     Plaintiffs are informed and believe, and therefore aver that Goldman did not make any negative statements about L&H or LHSP at the final meeting.

67.     Plaintiffs are informed and believe, and therefore aver that Goldman intended that the Dragon shareholders, including Bamberg and Roth, would rely on Goldman's advice and recommendations.  Goldman's recommendations at the final meeting were made directly to Bamberg and Roth and Bamberg and Roth relied upon them.

68.     Plaintiffs are informed and believe, and therefore aver that the recommendations and advice of Goldman concerning the L&H merger were express and/or implied representations that Goldman had conducted adequate, reasonable and diligent investigations to provide valid and sufficient bases for said recommendations and advice, including, but not limited to, the value of LHSP stock and the suitability of the proposed L&H merger.

69.      Bamberg and Roth accepted the recommendation and advice of Goldman and assented to the merger of Dragon into L&H.

70.     Bamberg and Roth relied on Goldman's advice in part because of Goldman's reputation as a highly qualified financial advisory firm and its global resources, and because of Goldman's representations to Dragon that it would act diligently as Dragon's exclusive financial advisor.  Plaintiffs are informed and believe, and therefore aver that Goldman marketed itself as "a leading investment bank in worldwide mergers and acquisitions."

71.     In accepting the merger, Bamberg and Roth relied upon the services and investigation Goldman allegedly performed, including that Goldman had performed an analysis of LHSP and that Goldman was confident that a transaction where plaintiffs received only LHSP stock would benefit plaintiffs.

72.     Plaintiffs are informed and believe, and therefore aver that Goldman had, in fact, performed little to no due diligence regarding the merger and had otherwise failed to provide services to Dragon and plaintiffs.

73.     The L&H Merger was completed in June 2000.  In said merger, Bamberg and Roth received LHSP stock in return for their Dragon stock.

74.     Goldman received $5 million in cash when the merger was complete.

75.     Pursuant to the terms of the merger agreement, Bamberg and Roth were restricted in their ability to sell LHSP stock.


## LHSP STOCK IS WORTHLESS

76.     In the fall of 2000, reports were published that LHSP had misstated revenues, engaged in sham transactions to inflate revenues and disguise expenses, and otherwise had misrepresented its financial condition.

77.     Plaintiffs are informed and believe, and therefore aver that the investigation into LHSP was begun by a Wall Street Journal reporter, who contacted several of LHSP's alleged customers in Asia and discovered that they were not, in fact, customers.

78.     Plaintiffs are informed and believe, and therefore aver that Goldman should have known or should have discovered LHSP's fraudulent activities, and should have advised Dragon, Bamberg and Roth not to engage in the merger with L&H.

79.     In the fall of 2000 it became clear that LHSP was not a financially sound company, and that Goldman's failure to conduct an adequate due diligence inquiry of LHSP and an adequate valuation analysis of LHSP stock caused damage and loss to plaintiffs who had entered into the L&H merger relying upon, inter alia, Goldman's recommendation and advice.

- 12 -

B3758032.1

80.     In November 2000, LHSP and its subsidiaries entered in bankruptcy.  The assets of LHSP and its subsidiaries, including the business of Dragon, were liquidated in those bankruptcies.

81.     As a result of LHSP's bankruptcy, and due to the restrictions placed upon the sale of much of the LHSP stock, as contemplated by the transaction recommended by Goldman, Bamberg and Roth lost virtually all of the value of their interest in Dragon.Plaintiffs are informed and believe, and therefore aver that in the exercise of due care in providing financial advice and assistance, Goldman knew or should have known of the fraudulent activities and unsound condition of LHSP.


## TOLLING AGREEMENT

82.     As a result of their substantial losses, Bamberg and Roth filed suit against entities including Goldman in Suffolk Superior Court in 2003.

83.     Goldman, Bamberg and Roth executed a tolling agreement on September 5, 2003 ("the agreement").

84.     The agreement preserved Bamberg and Roth's claims against Goldman concerning Goldman's engagement by Dragon Systems.  The agreement states that "[t]he period between August 7, 2003 and the Termination Date of this Tolling Agreement . . . shall not be included in determining the applicability of any statute of limitations, laches or any other defense based on the passage or lapse of time in any suit, action or other dispute resolution proceeding between any of the Trustees and Goldman that may be brought in connection with the Claims and Defenses."

85.     Bamberg and Roth notified Goldman of their intent to terminate the Tolling

Agreement on March 12, 2010 by overnight delivery service.  By the terms of the Tolling

Agreement, it therefore terminated on May 12, 2010, 60 days from March 13, 2010 (the date

Goldman received the notice).


## COUNT I:     BREACH OF CONTRACT: THIRD PARTY BENEFICIARY

86.     Bamberg and Roth incorporate and repeat the allegations of paragraphs 1 through

85 of this Complaint as if set forth in full herein.

87.     Plaintiffs are informed and believe, and therefore aver that Goldman knew that

Bamberg and Roth were among Dragon's founders, were Dragon shareholders, and that

Bamberg and Roth's approval was necessary for the merger of Dragon into L&H.

88.     Goldman's engagement letter states that "any written or oral advice provided by

Goldman Sachs in connection with our engagement is exclusively for the information of the

Board of Directors and senior management of the Company. . . ."

89.     Bamberg was part of Dragon's senior management.

90.     Roth was a member of Dragon's Board of Directors and part of Dragon's senior

management.

91.     Plaintiffs are informed and believe, and therefore aver that Bamberg and Roth

were intended third party beneficiaries of the contract between Goldman and Dragon, and

Goldman's performance was intended to benefit Bamberg and Roth.

92.     Goldman failed to perform its obligations under the contract; it failed adequately

to investigate LHSP and adequately to determine the value of LHSP stock.

93.     Plaintiffs are informed and believe, and therefore aver that Goldman's actions described above constitute breaches of contract with Dragon, Bamberg and Roth.

94.     As a direct result of Goldman's breaches of contract, Bamberg and Roth have suffered financial losses.  Bamberg and Roth exchanged their multi-million dollar interests in Dragon for worthless LHSP stock.

95.      Bamberg and Roth are entitled to recover their damages as a result of Goldman's breaches of contract.

## COUNT II:   NEGLIGENCE

96.      Bamberg and Roth incorporate and repeat the allegations of paragraphs 1 through 95 of this Complaint as if set forth in full herein.

97.     Plaintiffs are informed and believe, and therefore aver that Goldman owed Bamberg, Roth and Dragon a duty of reasonable care in its engagement as Dragon's exclusive financial advisor for the L&H transaction.

98.     Goldman held itself out to Dragon, Bamberg, and Roth as possessing expertise in investment banking.

99.     Plaintiffs are informed and believe, and therefore aver that Goldman knew that Bamberg and Roth were Dragon shareholders, that Roth was a member of the Board of Directors, that Bamberg and Roth influenced Dragon management decisions, and that Bamberg and Roth were relying on Goldman's advice in deciding whether to assent to the merger of Dragon with L&H.

100.     Plaintiffs are informed and believe, and therefore aver that through the conduct described in this Complaint, including Goldman's failure properly to investigate LHSP and

B3758032.1

failure  properly to value LHSP stock, Goldman failed to exercise due care in providing its recommendation to Bamberg and Roth that they enter into the L&H merger.

101.    Plaintiffs are informed and believe, and therefore aver that Goldman's actions constituted negligence.

102.    As a result of Goldman's negligence, Bamberg and Roth suffered damage and loss.

103.    Bamberg and Roth are entitled to recover their damages as a result of Goldman's negligence.

104.    Plaintiffs are informed and believe, and therefore aver that Goldman's conduct was wanton, willful, and egregious and warrants punitive damages.

## COUNT III:  GROSS NEGLIGENCE

105.    Bamberg and Roth incorporate and repeat the allegations of paragraphs 1 through 104 of this Complaint as if set forth in full herein.

106.    Plaintiffs are informed and believe, and therefore aver that Goldman owed a duty of care to Bamberg and Roth and a duty to act in good faith.

107.    Plaintiffs are informed and believe, and therefore aver that Goldman knew or should have known that there was a substantial likelihood that Bamberg and Roth would suffer harm as a result of Goldman's failure to perform adequately its obligations as financial advisor in the merger of Dragon into L&H.

108.    Plaintiffs are informed and believe, and therefore aver that Goldman failed to exercise even scant care in performing its obligations to Bamberg and Roth.  Goldman provided

a manifestly smaller amount of watchfulness and circumspection in advising Bamberg, Roth, and Dragon than the circumstances required of an investment bank of ordinary prudence.

109.    Plaintiffs are informed and believe, and therefore aver that Goldman showed deliberate inattention and reckless indifference to the responsibilities and obligations it undertook as Dragon's exclusive financial advisor.

110.    Plaintiffs are informed and believe, and therefore aver that Goldman failed to warn Bamberg and Roth about LHSP's financial condition and red flags raised by LHSP's conduct, including LHSP's move from a part-cash to an all-stock merger.

111.    Plaintiffs are informed and believe, and therefore aver that Goldman recognized its potential liability for gross negligence, willful misconduct and bad faith in the engagement agreement it drafted.

112.    Plaintiffs are informed and believe, and therefore aver that Goldman's acts and omissions as exclusive financial advisor to Bamberg, Roth and Dragon in the merger of Dragon into L&H, as described in this Complaint, were such a deviation from its duty of care as to constitute gross negligence.

113.    Plaintiffs are informed and believe, and therefore aver that Goldman's gross negligence caused Bamberg and Roth substantial injury and damages.

114.    Plaintiffs are informed and believe, and therefore aver that Goldman's conduct was wanton, willful, egregious and warrants punitive damages.


## COUNT IV:  FRAUD

115.    Bamberg and Roth incorporate and repeat the allegations of paragraphs 1 through 114 of this Complaint as if set forth in full herein.

B3758032.1

116.    Plaintiffs are informed and believe, and therefore aver, that Goldman made a false representation of material fact when its representatives advised Bamberg and Roth at the final meeting that the merger with L&H should be consummated, and that plaintiffs would benefit by exchanging their valuable interest in Dragon for stock in LHSP because LHSP stock was valuable.

117.    Goldman's statement that the merger would benefit Dragon shareholders was material to Bamberg and Roth's decision to enter into the merger.

118.    Plaintiffs are informed and believe, and therefore aver, that Goldman made the representation that Dragon shareholders should participate in the merger knowing that Goldman had not conducted an adequate investigation into L&H or LHSP, and therefore that it was not in Bamberg and Roth's best interest to enter into the merger, because the value of the LHSP stock was unknown.

119.    Plaintiffs are informed and believe, and therefore aver, that Goldman advised Bamberg and Roth with the intention that Bamberg and Roth would rely on Goldman's statements and agree to the merger.

120.    Bamberg and Roth actually and reasonably relied on Goldman's statements as true, and acted upon these statements to their detriment—they approved the merger of Dragon into L&H, and accepted ultimate worthless LHSP stock in exchange for their valuable interests in Dragon.

121.    Plaintiffs are informed and believe, and therefore aver that Goldman's conduct was wanton, willful, egregious and warrants punitive damages.

## COUNT V:   FRAUDULENT INDUCEMENT

122.    Bamberg and Roth incorporate and repeat the allegations of paragraphs 1 through 121 of this Complaint as if set forth in full herein.

123.    Plaintiffs are informed and believe, and therefore aver that Goldman represented to Dragon, including Janet Baker, who acted as plaintiffs' agent for purposes of their sale of Dragon stock, that Goldman would act as Dragon's sole financial advisor and would provide the professional services required to evaluate accurately any potential sale of Dragon stock, including any potential acquirers of Dragon stock, and would provide the advice necessary for Dragon and plaintiffs' to determine whether a given sale of their Dragon stock was prudent.

124.    Plaintiffs are informed and believe, and therefore aver that this representation was false when it was made—Goldman did not intend to adequately investigate any proposed sale of Dragon stock or give adequate advice to Dragon or plaintiffs.  Goldman's intent is reflected by, for example, Goldman's refusal, at the final meeting, to put its recommendation regarding the merger with L&H in writing, suggesting that such a written opinion would have required an additional fee.

125.    Plaintiffs are informed and believe, and therefore aver that Goldman knew the representations as to its intended services were false, and made the representations with an intent that Dragon and plaintiffs would be deceived into agreeing to engage Goldman to serve as Dragon's financial advisor.

126.    Plaintiffs believed Goldman's representations regarding its intended services to be true and relied upon them, and was induced by these representations into agreeing to engage Goldman.

B3758032.1

127.     As a result of Goldman's actions, plaintiffs have been damaged by exchanging their valuable Dragon stock for ultimately worthless stock in LHSP.

128.     Plaintiffs are informed and believe, and therefore aver that Goldman's conduct was wanton, willful, egregious and warrants punitive damages.

## COUNT VI:   NEGLIGENT MISREPRESENTATION

129.     Bamberg and Roth incorporate and repeat the allegations of paragraphs 1 through 128 of this Complaint as if set forth in full herein.

130.     Plaintiffs are informed and believe, and therefore aver that in the course of its engagement as investment banker, Goldman supplied false and incomplete information and assurances for the guidance of Bamberg and Roth in their decision to enter into the L&H merger.

131.     Plaintiffs are informed and believe, and therefore aver that Goldman failed to exercise reasonable care or competence in advising Dragon, Bamberg and Roth regarding the merger, among other things Goldman failed to obtain competently information concerning the financial condition of LHSP and its related companies and failed to value accurately the LHSP stock.

132.     Plaintiffs are informed and believe, and therefore aver that Goldman was retained to advise Dragon, Bamberg and Roth regarding the merger into L&H.

133.     Plaintiffs are informed and believe, and therefore aver that Goldman knew and intended that Dragon shareholders, including Bamberg and Roth, would rely on the information and recommendations provided by Goldman in deciding whether to enter into the L&H merger and in determining the value of the LHSP stock.

134.    To their detriment, Bamberg and Roth justifiably relied upon the information Goldman supplied directly and knowingly to them at the final meeting, as well as information Goldman knowingly supplied to Janet Baker as Bamberg and Roth's agent for purposes of the sale of their Dragon stock.

135.    As a result of Goldman's negligent misrepresentations,  Bamberg and Roth have suffered actual damage and loss.

136.     Bamberg and Roth are entitled to recover their damages as a result of Goldman's negligent misrepresentations.

137.    Plaintiffs are informed and believe, and therefore aver that Goldman's conduct was wanton, willful, egregious and warrants punitive damages.


## COUNT VII: INTENTIONAL MISREPRESENTATION

138.     Bamberg and Roth incorporate and repeat the allegations of paragraphs 1 through 137 of this Complaint as if set forth in full herein.

139.    At the final pre-merger meeting, Goldman recommended that Bamberg and Roth proceed with the merger.

140.    Plaintiffs are informed and believe, and therefore aver, that Goldman made this statement knowing it had failed to conduct an adequate inquiry into L&H and the value of LHSP stock, and knowing that significant questions as to the wellbeing of L&H and LHSP existed.

141.    Plaintiffs are informed and believe, and therefore aver, that Goldman willfully recommended the merger knowing that the merger would not benefit Dragon, Bamberg and Roth or with reckless disregard for whether or not the merger would benefit Dragon, Bamberg and Roth.

B3758032.1

142. Bamberg and Roth reasonably relied on Goldman's statements that the merger should be entered into, and proceeded with the merger.

143. As a result of their reliance on Goldman's intentionally false statement, Bamberg and Roth were injured.

144. Plaintiffs are informed and believe, and therefore aver that Goldman's conduct was wanton, willful, egregious and warrants punitive damages.

## COUNT VIII: UNFAIR AND DECEPTIVE BUSINESS PRACTICES: VIOLATION OF THE MASSACHUSETTS UNFAIR TRADE PRACTICES STATUTE

145. Bamberg and Roth incorporate and repeat the allegations of paragraphs 1 through 144 of this Complaint as if set forth in full herein.

146. Plaintiffs are informed and believe, and therefore aver that in providing the "services" described in this Complaint to Dragon, Bamberg, and Roth, Goldman was engaged in trade or commerce.

147. Plaintiffs are informed and believe, and therefore aver that Bamberg and Roth, as owners of Dragon stock and participants in the L&H merger, were engaged in trade and commerce in their dealings with Goldman.

148. Plaintiffs are informed and believe, and therefore aver that Goldman communicated directly with Bamberg and Roth, and also communicated with Janet Baker who relayed Goldman's communications to Bamberg and Roth.

149. Plaintiffs are informed and believe, and therefore aver that Goldman's conduct described in this Complaint, including but not limited to Goldman's failure to conduct adequate due diligence into LHSP's condition, failure to value accurately LHSP's stock, and failure to

warn plaintiffs that the merger would be harmful to them, constitutes unfair and deceptive acts and practices in violation of Massachusetts General Laws Chapter 93A, Section 2.

150.    Plaintiffs are informed and believe, and therefore aver, that Goldman had a conflict of interest in its representation of Dragon; Goldman had a direct financial incentive to encourage the merger to proceed regardless of whether the merger was in plaintiffs' best interest.

151.    Bamberg and Roth relied on Goldman's actions, representations, and omissions in agreeing to merge Dragon with L&H.

152.    Plaintiffs are informed and believe, and therefore aver that had Goldman advised against the merger, Bamberg and Roth would not have assented to the merger.

153.    Plaintiffs are informed and believe, and therefore aver that even if Bamberg and Roth had not relied on Goldman's actions, representations, and omissions, Goldman's conduct had a tendency to deceive and could reasonably have caused Bamberg and Roth to act differently from how they would have acted absent Goldman's conduct.

154.    Bamberg and Roth have been damaged as a direct and foreseeable result of Goldman's conduct and omissions in violation of Chapter 93A.

155.    Plaintiffs are informed and believe, and therefore aver that Goldman acted knowingly and willfully, therefore Bamberg and Roth are entitled to a trebling of their actual damages, or at least two times their damages.

156.    Bamberg and Roth are entitled to recover their reasonable costs of bringing this action, including attorneys' fees and expenses.

B3758032.1

## COUNT IX:   BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

157.    Bamberg and Roth incorporate and repeat the allegations of paragraphs 1 through 156 of this Complaint as if set forth in full herein.

158.    Plaintiffs are informed and believe, and therefore aver that in performing its contract, Goldman had a duty to deal fairly and in good faith with Bamberg and Roth.

159.    Plaintiffs are informed and believe, and therefore aver that Goldman breached its duty of good faith and fair dealing by the actions and omissions described in this Complaint, including Goldman's failure to investigate LHSP, failure to value accurately LHSP stock, and failure to disclose red flags and concerns about L&H and LHSP known to Goldman.

160.    Plaintiffs are informed and believe, and therefore aver that Goldman further breached its duty of good faith and fair dealing by creating a conflict of interest between Goldman and plaintiffs, whereby Goldman would benefit from the merger whether or not plaintiffs benefitted.

161.    Plaintiffs are informed and believe, and therefore aver that Goldman's actions deprived Bamberg and Roth of their right to receive the benefits under Goldman's contract with Dragon.

162.    Plaintiffs are informed and believe, and therefore aver that Goldman's failure to perform the contract in good faith and deal fairly with Bamberg and Roth caused Bamberg and Roth to be damaged.

163.    Plaintiffs are informed and believe, and therefore aver that Goldman's conduct was wanton, willful, and egregious and warrants punitive damages.

B3758032.1

## COUNT X:   BREACH OF FIDUCIARY DUTY

164.    Bamberg and Roth incorporate and repeat the allegations of paragraphs 1 through 163 of this Complaint as if set forth in full herein.

165.    Plaintiffs are informed and believe, and therefore aver that Goldman assumed a fiduciary responsibility to Bamberg and Roth because of Goldman's role in the merger as Dragon's exclusive financial advisor, Bamberg and Roth's status as shareholders of Dragon, Roth's status as a member of the Board of Directors, Bamberg and Roth's status as members of Dragon's senior management, Goldman's communications and representations directly to Bamberg and Roth, Goldman's communications and representations to Janet Baker as an agent of Bamberg and Roth, and Bamberg and Roth's trust in, confidence in, and reliance on Goldman.

166.    Goldman held itself out as possessing exceptional skill, experience, and knowledge in the fields of investment banking, mergers, and acquisitions, and as such was in a position to influence Bamberg and Roth's decision to approve the Dragon merger into L&H.

167.    Plaintiffs are informed and believe, and therefore aver that Goldman knowingly acted in  breach of its fiduciary duty to Bamberg and Roth by, among other things, its failure to investigate adequately LHSP and L&H, and its failure to value accurately LHSP stock.

168.    As a direct and proximate result of Goldman's breach, Bamberg and Roth have been damaged.

169.    Plaintiffs are informed and believe, and therefore aver that Goldman's conduct was wanton, willful, and egregious and warrants punitive damages.

B3758032.1

## COUNT XI:   VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND SEC RULE 10B-5

170.   Bamberg and Roth incorporate and repeat the allegations of paragraphs 1 through 169 of this Complaint as if set forth in full herein.

171.   Plaintiffs are informed and believe, and therefore aver that Goldman, by the use of the means or instrumentalities of interstate commerce and the mails, participated in a course of conduct that constituted a fraud and deceit, misrepresented material facts and omitted to disclose material facts, and concealed LHSP's true financial condition.

172.   Goldman's actions were in connection with both the purchase and sale of securities; plaintiffs exchanged their shares in Dragon for LHSP stock.

173.   Plaintiffs are informed and believe, and therefore aver that evidence of Goldman's knowledge and recklessness is demonstrated by at least the following facts:

a.   Goldman failed to conduct an adequate due diligence inquiry and an adequate valuation analysis of LHSP stock.

b.   In the fall of 2000, reports were published, based on investigations that could and should have been completed by Goldman in exercise of its obligations to Dragon, that LHSP had misstated revenues, engaged in sham transactions to inflate revenues and disguise expenses, and otherwise had misrepresented its financial condition.

c.   Goldman knew or should have known of the fraudulent activities and unsound condition of LHSP.

d.   At the final meeting regarding the decision to merge with L&H, Goldman recommended the merger despite the fact that the terms had changed:  originally,

B3758032.1

Dragon shareholders were to receive half of the value of their stock in cash and the other half in LHSP stock, but the final proposal was that Dragon shareholders would receive LHSP stock only, and no cash.  Goldman failed to warn Bamberg and Roth that this change signaled that L&H was not financially sound.

e.   Goldman did not make any negative statements about L&H or LHSP at the final meeting.

174.   Plaintiffs are informed and believe, and therefore aver that by reason of the foregoing, Goldman has violated section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

175.   Bamberg and Roth relied on Goldman's actions, representations, and omissions in agreeing to merge Dragon with L&H, and to exchange their stock in Dragon for ultimately worthless stock in LHSP.

176.   Plaintiffs are informed and believe, and therefore aver that had Goldman advised against the merger, Bamberg and Roth would not have assented to the merger and would not have exchanged valuable shares in Dragon for worthless LHSP stock.

177.   Bamberg and Roth have been damaged as a result of Goldman's conduct and omissions in violation of section 10(b) of the Exchange Act and Rule 10b-5.


WHEREFORE,  Bamberg and Roth demand judgment against Goldman for damages in an amount fully and completely compensate them for their losses plus punitive damages, interest, court costs, attorneys' fees, and such other and further relief that the Court deems just and proper.

## JURY DEMAND

Bamberg and Roth demand that their claims be heard by a jury.

By their attorneys,

_____/s/ Jack R. Pirozzolo_____
Jack R. Pirozzolo, MA BBO #400400
Jennifer Behr, MA BBO# 668798
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
617-832-1000

Dated: June 4, 2010

B3758032.1