```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

ROBERT ROTH and PAUL G. BAMBERG,   )
                  Plaintiffs       )
                                   )
v.                                 )
                                   )Civil Action No. 10-10932-PBS
GOLDMAN SACHS & CO.,               )
               Defendant and       )
          Third-Party Plaintiff,   )
                                   )
v.                                 )
                                   )
JANET BAKER AND JAMES BAKER,       )
          Third-Party Defendants.  )
_____)
```

**MEMORANDUM AND ORDER**

September 6, 2013

Saris, U.S.D.J.

After a jury trial, lasting twenty-three days, Plaintiffs Robert Roth and Paul Bamberg move for a renewed judgment as a matter of law under Fed. R. Civ. P. 50 on their negligent misrepresentation claim and their professional negligence claim, or, alternatively, move for a new trial under Rule 59(a). They also move to alter and amend their initial pleadings under Rule 15(b)(2) and to alter and amend the judgment under Rule 59(e). The factual background of this case is detailed in a previous opinion on Plaintiffs' Chapter 93A claims. See Baker v. Goldman Sachs & Co., 2013 U.S. Dist. LEXIS 83799 (D. Mass. June 11, 2013). The various motions are resolved as follows:

1. The renewed motion for judgment as a matter of law (Docket No. 490) under Fed. R. Civ. P. 50 as to Plaintiffs'

negligent misrepresentation claim is **DENIED**. While I did not agree with all of the jury's findings, there was sufficient evidence to support the jury's verdict in favor of the Defendant. See Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004) ("Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party.") (quotations omitted).

    2. The renewed motion for judgment as a matter of law (Docket No. 512) under Fed. R. Civ. P. 50 as to Plaintiffs' professional negligence claim is **DENIED**. Plaintiffs did not move for judgment as a matter of law on the professional negligence claim at the close of trial. See Trial Tr. Jan. 16, 2013 at 221; see also Muñoz v. Sociedad Española de Auxilio Mutuo y Beneficiencia de P.R., 671 F.3d 49, 58 (1st Cir. 2012) ("[F]ailure to raise an issue prior to a Rule 50(b) motion for judgment as a matter of law, without more, results in a waiver of that issue on appeal.") Additionally, there was sufficient evidence to support the jury's verdict in favor of the Defendant. See Baker v. Goldman Sachs & Co., 2013 U.S. Dist. LEXIS 83799, at *45 (D. Mass. June 11, 2013).

    3. Plaintiffs move for a new trial on several grounds. A court has discretion to order a new trial when a Rule 59(a)

motion raises "questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." Cigna Fire Underwriters Co. v. MacDonald & Johnson, Inc., 86 F.3d 1260, 1262-63 (1st Cir. 1996). Further, "the district court has the power and duty to order a new trial whenever, in its judgment, the action is required in order to prevent injustice." Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009) (quotations omitted).

Plaintiffs contend the Court erred in consolidating and trying their case alongside the Baker Plaintiffs' case (Docket 09-cv-10053-PBS), arguing their legal and financial interests directly conflicted with the Bakers in light of Goldman Sachs' third party contribution claims. However, the Plaintiffs never presented the Court with these alleged legal and financial conflicts of interest before or during trial. See Cantrell v. GAF Corp., 999 F.2d 1007, 1011 (6th Cir. 1993) ("[N]o error exists in the district court's consolidation of claims for trial in the absence of an objection to such consolidation or a motion for severance."); Ikerd v. Lapworth, 435 F.2d 197, 204 (7th Cir. 1970) (objection to consolidation on certain grounds not appealable because specific objection not raised until after trial). In May of 2011, Plaintiffs opposed consolidation of the two cases and voiced concerns regarding their ability to properly prepare for the case given the Bakers' timeline; Pl.'s Opp'n to

Mot. To Consolidate Cases, Docket No. 55 at 2. In February and November of 2011, they raised disputes over participation in discovery; e.g., Letter to Judge Saris re: discovery issues, Docket No. 32; Pl.'s Mot. to Sever, Docket No. 78. The Roth/Bamberg plaintiffs also noted at various points that the interests of the two sets of Plaintiffs were not identical; Pl.'s Emergency Mot. for Clarification of Ct. Order, Docket No. 29 at 2; and there "may be adverse or inconsistent" positions between the parties; Pl.'s Mot. to Sever, Docket No. 78 at 1-2. However, the only two legal issues presented by the Plaintiffs in the November 2012 Pretrial Memorandum to the Court that were different from the Baker Plaintiffs were statute of limitations claims and Janet Baker's third party beneficiary claim, Docket No. 311 at 49-52, which were eventually dropped at trial. At no point before or during trial did the Plaintiffs suggest that their legal positions regarding Goldman's third party contribution claims were adverse to the Bakers. As such, this objection to trial consolidation is waived.

    The fact that Goldman Sachs brought third-party contribution claims against the Bakers does not make the Baker plaintiffs' interests adverse to the Roth/Bamberg plaintiffs' interests. In this case, both the Bakers and the Roth/Bamberg plaintiffs had substantially the same interest in demonstrating Goldman Sachs' liability, and the operative facts underlying the claims

substantially overlapped. The Roth/Bamberg plaintiffs have not identified any actions by the Bakers at trial that were prejudicial to the Roth/Bamberg claims. Roth and Bamberg suggest there was prejudice and confusion from consolidation because the jury may have conflated their negligent misrepresentations claims with the Bakers' claims. The facts of the Roth/Bamberg negligent misrepresentations claims differed, they argue, because the Roth/Bamberg plaintiffs had no knowledge of Dragon's due diligence procedures. Accordingly, they say, the Bakers focused on different legal arguments regarding their negligent misrepresentation claims. This argument is nothing more than Monday morning quarter-backing. Entering the trial, after years of discovery, all parties had substantially the same claims against Goldman and never argued to the Court there was a conflict of interest.

Next, Plaintiffs argue that a new trial is warranted because they were denied adequate time to present their theory of the case. "District courts may impose reasonable time limits on the presentation of evidence. . . . [I]n this era of crowded district court dockets federal district judges not only may but must exercise strict control over the length of trials, and are therefore entirely within their rights in setting reasonable deadlines in advance and holding the parties to them. . . ." <u>Borges v. Our Lady of the Sea Corp.</u>, 935 F.2d 436, 442-43 (1st

Cir. 1991) (citations omitted).

Both sets of Plaintiffs were initially allocated 29 hours for the entire trial to share between them as they decided fit. As the trial progressed, a palpable conflict arose regarding proper allocation of time between the two sets of Plaintiffs. Once the Court became aware of the disagreement, it adjusted the time allocation, adding an additional two hours to the Roth/Bamberg plaintiffs for opening and closing statements, setting aside six hours of time solely for the Bamberg/Roth plaintiffs' case, and finally allowing both sets of plaintiffs additional cross-examination time, although they had already used the entirety of their allocated time. Significantly, by the close of trial, the entire Plaintiffs' case had run 36.9 hours, almost two hours <u>more</u> than the total time (35 hours) jointly requested by the Plaintiffs after the pretrial conference. <u>See</u> Docket No. 330. The Bamberg/Roth Plaintiffs used 9.6 hours of the total time in live presentation,[2] and 4.5 hours of designated video testimony[3] – nearly 40% of the joint Plaintiffs' case. Goldman received 25.8 hours. <u>See</u> Docket No. 470, Exh. 1.

It is true that the Roth/Bamberg plaintiffs were allocated less time to present their claims to the jury, relative to the Baker plaintiffs. However, most of the evidence and testimony

---

[2] <u>See</u> Docket No. 470, Exh. 1.

[3] <u>See</u> Docket No. 509 at 11 n.1.

presented by the Baker plaintiffs was relevant and critical to the Roth/Bamberg plaintiffs' claims. Additionally, as the Court learned of certain differences in strategy between the two sets of plaintiffs, it allocated more time to the Roth/Bamberg plaintiffs and reserved already allocated time solely for their case. See Akouri v. State of Florida Dep't of Transp., 408 F.3d 1338, 1346 (11th Cir. 2005) (finding district court did not abuse discretion in setting time limits, because court "made reasonable accommodations as it became necessary", such as adding additional time, and plaintiff "failed to adduce any evidence that the court acted inflexibly or unreasonably with respect to such time restrictions.").

Finally, although the Roth/Bamberg plaintiffs argue that they had less time than the Baker plaintiffs to present their case, they have not demonstrated any specific prejudice they suffered from a shorter time frame. See Pierce v. County of Orange, 526 F.3d 1190, 1200 (9th Cir. 2008) (affirming district court's time limit, holding that the plaintiffs did not show that there was "harm incurred as a result" of the time limit (citation omitted)). The Plaintiffs generally state they had less time for rebuttal and cross-examination. However, this is true of any case with time limits imposed, and they point to no evidence or argument they were unable to present because of the proportionally shorter time frame. See Deus v. Allstate Ins. Co.,

15 F.3d 506, 520 (5th Cir. 1994) (finding district court did not abuse discretion in setting time limits because plaintiff "has pointed to no evidence that he was unable to present that would have aided his case in any significant way.").

The Plaintiffs argue, finally, that the Court erred in instructing the jury, over their objection, that it could consider the Engagement Letter and its negotiation in deciding the Plaintiffs' claims. They argue evidence of the Engagement Letter was irrelevant to the Roth/Bamberg plaintiffs because they were not present for the negotiations of the Engagement Letter, nor were they aware that the Engagement Letter limited Goldman Sachs' services to Dragon's interests, as opposed to the individual shareholders. However, Plaintiffs brought negligent misrepresentation and professional negligence claims against Goldman Sachs. These claims required Plaintiffs to prove that Roth and Bamberg were part of the "limited group of persons for whose benefit and guidance [Goldman] intended to supply the information or kn[ew] that the recipient intend[ed] to supply it." Nycal Corp. v. KPMG Peat Marwick LLP., 426 Mass. 491, 496 (1998). As the Court held in denying Plaintiffs' motion in limine, the Defendants were entitled to present the Engagement Letter as evidence that Goldman did not view individual shareholders, such as Roth and Bamberg, as part of the limited group to whom they supplied information. See Final Pretrial

Conference Tr. 65-69.

The motion for a new trial (Docket No. 509) is **DENIED**.

4. The motion to alter the judgment (Docket No. 507) is **ALLOWED IN PART AND DENIED IN PART**.

Plaintiffs request that the Judgment be amended by entering Judgment in favor of the Third-Party Plaintiff, Goldman Sachs. This judgment, they argue, reflects the jury answers to verdict questions 21-28 – the questions pertaining to Goldman Sachs' third-party contribution claims against the Baker Plaintiffs. The jury instructions stated that these claims were only applicable if Goldman Sachs was found liable to the Bamberg/Roth Plaintiffs. See Trial Tr. Day 20, 192:17-24 ("Goldman Sachs claims that if it is found liable for any of the Roth or Bamberg claims, the Baker plaintiffs are liable to Goldman for contribution, meaning that they will have to pay a portion of Mr. Roth and Mr. Bamberg's damages. Contribution applies where two people are both liable to the same person for the same injury, and each wrongdoer must pay a pro rata or an equal share of the injured parties' damages."). The jury mistakenly answered these questions. The jury did not find Goldman Sachs liable, and, so, the third-party contribution claim under state law is not legally viable. See Mass. Gen. L. Ch. 231B, § 3(d) ("If there is no judgment for the injury against the tortfeasor seeking contribution, his right of contribution shall be barred . . ."); Dighton v. Federal Pacific

Electric Co., 399 Mass. 687, 691 (1987) ("The right to contribution is derivative of the joint liability in tort of the third-party plaintiff and the third-party defendant. Without liability in tort, there is no right to contribution."). The motion to amend the judgment to include third-party contribution claims against the third-party defendants is **DENIED**.

    5. Plaintiffs seek to amend their pleadings by adding a cross-claim of breach of fiduciary duty and negligent misrepresentation against Third-Party Defendant Janet Baker, and a claim of breach of fiduciary duty against Third-Party Defendant Jim Baker by Plaintiff Paul Bamberg only. Rule 15(b)(2) states that:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.

    In this case there was no indication that the Roth and Bamberg plaintiffs intended to bring claims of negligent misrepresentation or breach of fiduciary duty against the Bakers as Third Party Defendants. Indeed, the Roth/Bamberg plaintiffs did not bring any claims against the Bakers, so there was no way for the Bakers to give consent to try an issue against them, express or implied. The Baker Plaintiffs argue, credibly, that they would have pursued different trial tactics, such as longer cross examination of the Roth and Bamberg plaintiffs, if they had

anticipated such direct claims. Thus, allowing these amended pleadings would prejudice the Baker plaintiffs. See Lynch v. Dukakis, 719 F.2d 504, 509 (1st Cir. 1983) ("Even if this test [for consent] is met, amendment should not be allowed if it would prejudice a party."). The motion to alter and amend Plaintiffs' initial pleadings under Rule 15(b)(2) (Docket No. 475) is **DENIED.**

In their opposition to the motion to alter and amend the pleadings, the Baker Plaintiffs have demanded sanctions and legal fees under 28 U.S.C. § 1927. The motion to alter and amend the pleadings is without merit. However, given the unique posture of this case with the jury (mistakenly) returning a verdict in favor of Goldman's contribution claims against the Bakers, the filing does not warrant sanctions. The motion for sanctions is **DENIED**.

    /s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge